**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROCKVILLE FUEL AND FEED COMPANY,
INCORPORATED,
Plaintiff-Appellee,

v.

JAMES DESANTIS,
Defendant & Third Party

Plaintiff-Appellant,

No. 95-2543

and

A & J CONCRETE CORPORATION,
Defendant,

FRANCES KILBY,
Third Party Defendant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-1730-A)

Argued: May 9, 1996

Decided: June 17, 1996

Before HALL and LUTTIG, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Warren Nichols, DOCTER, DOCTER & LYNN, P.C., Washington, D.C., for Appellant. Ronald William Stern, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, James DeSantis, was the president and one-third owner of A & J Concrete Corporation ("A & J"), a now defunct construction company that had purchased substantial amounts of concrete from appellee, Rockville Fuel & Feed Company ("Rockville"). A & J and Rockville stipulated that A & J owes Rockville $200,000 pursuant to a line of credit Rockville extended to A & J for the purchase of concrete. The instant action concerns Rockville's attempt to collect on a personal guarantee Rockville contends was signed by DeSantis or his agent. The district court, after a bench trial, held that DeSantis' agent had signed the personal guarantee in DeSantis' name and that DeSantis was personally liable for the $200,000. J.A. at 65-68. DeSantis appealed, arguing that he never authorized his signature to be placed on a personal guarantee and that, in any event, the agreement he signed was superseded by a later agreement.

In March 1982, A & J completed a credit application to purchase concrete. Frances Kilby, A & J's bookkeeper, testified that DeSantis gave her the credit application, she filled it out, and DeSantis then "looked at it." J.A. at 28. Kilby then brought the credit application to Rockville's office. John Wells, an employee of Rockville, refused to accept the application because it was not signed. Kilby then left Rockville and called DeSantis, telling him that Rockville would not accept the document unless it was signed. DeSantis authorized Kilby to "sign

2

[his name to] the paper." J.A. at 29. Kilby then signed both her name and DeSantis' name to the credit application and returned to Rockville.* As is plain from the face of the application, the only place for a signature on the two-page document is under a passage marked "WHEREBY AGREE TO BE PERSONALLY liable . . . ." J.A. at 19.

First, DeSantis contends that Kilby had no authority to sign a personal guarantee in his name. The district court rejected this argument, holding that DeSantis authorized Kilby to sign the 1982 Credit Agreement and that under Maryland law, one who signs a document is presumed to have knowledge of it contents absent fraud or duress.

Second, DeSantis argues that even if he is liable under the 1982 Credit Agreement, a 1986 Credit Agreement which he did not sign supersedes the 1982 agreement and exonerates him from liability under the doctrine of merger. The district court found that the 1986 document was "an internal document produced by Rockville that was not intended to be a credit application or guaranty," J.A. at 68, and thus held that the unsigned 1986 update did not supersede the 1982 agreement.

We have carefully considered the arguments in the briefs and at oral argument and find no reversible error. Accordingly, we affirm the judgment of the district court on the reasoning of that court.

AFFIRMED
_____
*Kilby is not a party to this suit because she has filed for bankruptcy.

3